UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

WILLIAM BLANSCET,

           Plaintiff,

v.

OREGON DEPARTMENT OF CORRECTIONS; OREGON STATE PENITENTIARY; REED PAULSON, M.D., *individually and in his personal capacity;* and DOES 1-3, *individually and in their personal capacity*,

           Defendants.

Case No. 6:21-cv-00301-AR

**OPINION AND ORDER**

**ARMISTEAD, Magistrate Judge**

    Plaintiff William Blanscet, an adult in the custody of the Oregon Department of Corrections (ODOC) and held at Oregon State Penitentiary (OSP), brings this action asserting

Page 1  – OPINION AND ORDER

four claims under Oregon common law and 42 U.S.C. § 1983.[1] In Claims 1 and 2, Blanscet alleges that defendant Reed Paulson, M.D.[2] was negligent—and that ODOC and OSP were vicariously liable for his negligence—by failing to order adequate imaging and medication for his hip pain, discontinuing his prescription for anti-anxiety medication, ordering him to undergo physical therapy, and failing to diagnose his prostate cancer in a timely manner. (Compl. ¶¶ 21-29, ECF No. 1.) In Claims 3 and 4, he alleges that Paulson violated his Eighth Amendment right to be free from cruel and unusual punishment by acting with deliberate indifference to his medical needs and by delaying necessary medical treatment for his prostate cancer. (*Id.* ¶¶ 30-45.)

Defendants move for summary judgment on all of Blanscet's claims, arguing that he failed to fully exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) of 1955, 42 U.S.C. § 1997e(a). (Defs.' Mot. Summ. J. at 6-7, ECF No. 44.) Alternatively, they argue that summary judgment is appropriate on Claims 3 and 4 because Blanscet has not raised a genuine dispute of material fact that Paulson acted with deliberate indifference to his serious medical need.

As explained below, defendants' motion is granted.[3]

---

[1] The court has federal question jurisdiction over Blanscet's § 1983 claims under 28 U.S.C. § 1331, and supplemental jurisdiction over his related state law claims under 28 U.S.C. § 1367.

[2] Blanscet also brought this action against Does 1-3—whom he alleged were "individuals acting within the course and scope of their employment [and under the color of state law] or in the alternative in an agency capacity with ODOC and OSP." (Compl. ¶ 4.) Blanscet has not ascertained the identity of the Doe defendants and now appears to assert Claims 2 through 4 solely against Paulson.

[3] The parties have consented to jurisdiction by magistrate judge as under 28 U.S.C. § 636(c)(1). (Full Consent, ECF No. 18.)

## BACKGROUND

A.  *Evidence*

For purposes of this summary judgment dispute, the parties submitted a joint statement stipulating to certain general facts about Blanscet's medical history and the grievances that he filed while in ODOC custody. (Joint Statement Agreed Facts, ECF No. 42.) The joint statement is accompanied by five exhibits: (1) a record of physician's orders made between June 2017 and January 2019; (2) copies of Blanscet's medical progress notes between May 2018 and January 2019; (3) a record of physician's orders between January 2019 and March 2019; (4) copies of progress notes taken between January 2019 and March 2019; and (5) a copy of a grievance submitted by Blanscet in January 2022. (*Id.* ¶¶ 12-16, Exs. A-E.)

Defendants also submitted declarations from Elleanor Chin, the Senior Assistant Attorney General for ODOC's Trial Division, and Brent Erikson, the Discrimination Complaint and ADA Coordinator at OSP. (Decl. of Elleanor Chin, ECF No. 44-1; Decl. of Brent Erikson, ECF No. 44-2.) Erikson's declaration is accompanied by three exhibits: (1) a copy of the ODOC grievance form; (2) a copy of Blanscet's Complaint Log History; and (3) a copy of a grievance submitted by Blanscet in November 2018.

Blanscet submitted two declarations with his response opposing defendant's motion for summary judgment. First, he relies on the declaration of Susan Lawrence, M.D, who is prepared to testify as an expert witness in this matter. (Decl. of Susan Lawrence, M.D. ¶ 1, ECF No. 55). Lawrence reviewed Blanscet's ODOC medical records, the transcript of Blanscet's deposition on November 12, 2021; the transcript of Paulson's deposition on December 27, 2021; and ODOC's radiology policies and procedures. (*Id.* ¶ 5.) Blanscet also submitted the declaration of his

Page 3 – OPINION AND ORDER

counsel, Amanda Reilly. (Decl. of Amanda Reilly, ECF No. 56.) Reilly's declaration is accompanied by five exhibits: (1) excerpts of Blanscet's deposition; (2) excerpts of Paulson's deposition; (3) a copy of a progress note written by Paulson on December 17, 2018; (4) copies of AIC communication forms that Blanscet sent to Paulson and OSP staff during the relevant period; and (5) excerpts of Blanscet's relevant medical records. From those materials, the court constructs the following timeline of Blanscet's medical history.

**B.**     ***Relevant Medical History***

Blanscet is an adult-in-custody (AIC), who arrived at OSP on January 16, 2007. (Joint Statement ¶¶ 2-3.) OSP is an ODOC institution located in Salem, Oregon. Paulson is an Oregon-licensed physician employed by ODOC Health Services.

In May 2018, Blanscet complained of hip pain to Health Services. (*Id.* ¶ 7.) Subsequently, on June 14, he submitted a kyte—an AIC written communication form—stating that he "heard [his] hip pop while playing softball" and was unable to walk downstairs due to hip pain. (Reilly Decl. ¶ 5, Ex 4 at 1). He was scheduled to see a nurse. (*Id.*) One week later, he requested a follow-up appointment, stating that he was able to walk downstairs again. (*Id.* ¶ 5, Ex. 4 at 2.) He saw Paulson, and an x-ray was performed on June 27, which was read as showing "developing osteoarthritis." (*Id.* ¶ 3, Ex. 2 at 36 (Dep. of Reed Paulson); Lawrence Decl. ¶ 8.) On July 20, Blanscet communicated that his hip pain had worsened and inquired about "shots for ongoing, protracted pain." (Reilly Decl. ¶ 5, Ex. 4 at 3.) Paulson saw Blanscet, and Blanscet received a cortisone shot to treat his pain. (*Id.* ¶ 2, Ex. 1 at 19 (Dep. of William Blanscet).)

Blanscet sent another kyte to Paulson on October 10, 2018, stating that his hip pain had worsened. (*Id.* ¶ 5, Ex. 4 at 4.) At the next appointment, Paulson recommended physical therapy,

and Blanscet underwent PT evaluation on November 7. (*Id.* ¶ 6, Ex. 5 at 22.) Clinical notes from PT dated November 28, 2018, December 12, 2018, and January 2, 2019, reflect that Blanscet's pain did not improve and reportedly worsened. (*Id.* at 16-21.)

On December 16, 2018, Blanscet stated that he was experiencing "UNBEARABLE PAIN," and regression from physical therapy and that he feared "permanent injury." (*Id.* ¶ 5, Ex. 4 at 5.) He was scheduled for pain assessment. At an appointment with Paulson on December 17, 2018, Blanscet expressed frustration that his medical needs were not being taken seriously and stated that he "might have to retain a lawyer." (*Id.* ¶ 2, Ex. 1 at 6.) Paulson advised him that "legal threats could be considered a form of extortion" and noted "subtle legal threats – counselled re: extortion" in his progress note for that appointment. (*Id.* ¶¶ 3-4, Exs. 2-3.)

On January 15, 2019, Blanscet submitted a kyte stating that he was in agony and expressing frustration that his "current physical condition has fallen on deaf ears" and that the "lack of empathy for [his] pain [was] disconcerting." (*Id.* ¶ 5, Ex. 4 at 6.) At an appointment on January 18, Paulson ordered crutches, a Torodol injection for pain management, and an x-ray of Blanscet's pelvis. (*Id.* ¶ 6, Ex. 5 at 10; Lawrence Decl. ¶¶ 13-14.)

In a kyte dated February 18, 2019, Blanscet stated that the Torodol injection relieved his pain for only 24 hours and that the "stairs to my cell are becoming [a] problem and my current level of pain is intolerable." (Reilly Decl. ¶ 6, Ex. 5 at 7.) He had an appointment with Paulson, and an MRI was performed on February 26, 2019. Following a CT guided biopsy performed on March 18, 2019, Blanscet was diagnosed with Stage IV metastatic prostate cancer. (*Id.* ¶ 16; Joint Statement ¶ 9).

After his diagnosis, Blanscet received treatment for prostate cancer, including radiation and chemotherapy. (Joint Statement ¶ 10.) On April 3, 2019, he was admitted to Salem Hospital for pain crisis, where he was found to have a pulmonary embolism. (Reilly Decl. ¶ 6, Ex. 5 at 1-5). He was discharged in stable condition on April 12 and returned to OSP. (*Id.*) Blanscet filed this action on February 25, 2021. (ECF No. 1.) At that time, his prostate cancer was reportedly in remission. (Joint Statement ¶ 11.)

C.   ***Blanscet's Grievances***

Blanscet filed three grievances during his time in ODOC custody. (Joint Statement ¶ 4.) He filed his first grievance, OSP 2018-10-00069, requesting anxiety medication in October 2009. (Erikson Decl. ¶ 13.) Due to its retention policies, ODOC no longer has a copy of that grievance.

In his second grievance, OSP 2018-11-053A—which was received by the Grievance Office on November 20, 2018—Blanscet reported that he had not received a specific anti-anxiety medication. (*Id.* ¶ 15, Ex. 3 at 4.) His ODOC medical provider responded that the requested medication was contraindicated for him and noted that he instead had agreed to an alternative treatment plan prescribing two different anti-anxiety medications. (*Id.* at 3.) Blanscet filed an initial appeal. (*Id.* at 2.) ODOC's Chief Psychiatrist, responded to that appeal explaining that, given Blanscet's history of "misusing multiple substances," it would be problematic to prescribe the requested medication. (*Id.* at 1.) Blanscet did not file a second-level appeal.

Blanscet submitted his third grievance, OSP 2022-01-063, on December 5, 2021—nearly ten months after filing this action. (Joint Statement ¶ 4, Ex. E.) In that grievance, Blanscet requested a shoe lift that had been approved by a podiatrist and complained that the delay of this medical device was a "perpetuation of the same pre-existing indifference to [his] well-being and

[liberties] as a human being." His grievance was accepted on January 18, 2022, and Blanscet's request for a shoe lift was approved. (Erikson Decl. ¶ 13, Ex. 2.)

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324 (citing FED. R. CIV. P. 56(e)). The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants contend that Blanscet's § 1983 claims[4] should be dismissed because he did not file any grievances regarding the alleged misconduct underlying those claims and therefore

---

[4]   In their summary judgment motion, defendants originally argued that *all* of Blanscet's

Page 7 – OPINION AND ORDER

did not exhaust his administrative remedies as required by the PLRA. (Def.'s Mot. Summ. J. at 6-7.) Blanscet counters that he should be excused from exhausting administrative remedies because defendants have not shown that the grievance process was available to him. As explained below, the court agrees that Blanscet did not properly exhaust his administrative remedies. Consequently, the court declines to address the parties' arguments about the merits of those claims.

A.      *§ 1983 Claims and PLRA Exhaustion*

The PLRA mandates that an AIC exhaust "such administrative remedies as are available" before bringing an action "with respect to prison conditions under section 1983 of this title, or any other Federal law." 42 U.S.C. § 1997e(a). "Requiring exhaustion provides prison officials a 'fair opportunity to correct their own errors' and creates an administrative record for grievances that eventually become the subject of federal court complaints." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)). The PLRA requires "proper" exhaustion, which means that an AIC "must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing the suit in federal court." *Woodford*, 548 U.S. at 88. "[T]he obligation to exhaust

---

claims should be dismissed for failure to exhaust. (Def.'s Mot. Summ. J. at 7.) Blanscet countered that the PLRA does not apply to his state law claims because it mandates exhaustion only for actions concerning "prison conditions under section 1983 of this title, or any other Federal law." (Pl. Resp. at 5.) Defendants did not respond to that argument in their reply brief. (*See generally*, Defs.' Reply, ECF No. 59.) The court treats defendants' failure to respond to that argument as a concession, and therefore, considers their exhaustion argument only as applied to Blanscet's § 1983 claims (Claim 3 and Claim 4).

'available' remedies persists as long as *some* remedy remains available." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original).

In *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015), the Ninth Circuit articulated the procedure for determining whether an AIC exhausted available administrative remedies. First, a defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that remedy." *Id.* at 1191 (explaining that a summary judgment motion is the "proper procedural vehicle for determining whether administrative remedies have been exhausted"). Once the defendant has made such a showing, the burden shifts to the plaintiff, "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* (quoting *Hiloa v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996)). Although an AIC carries the burden of proving that administrative remedies were effectively unavailable to him, the "ultimate burden of proof . . . remains with the defendant." *Id.* (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)).

To satisfy their initial burden under *Williams*, defendants submitted the declaration of Brent Erikson, who has been employed by ODOC as the Discrimination Complaint and ADA Coordinator at OSP since March 1, 2014. (Erikson Decl. ¶ 1, ECF No. 44-2.) In that capacity, Erikson serves as a custodian of records for ODOC, processes and investigates Discrimination Complaints, and assists the Grievance Coordinator in processing grievances filed by AICs.

Erikson explains that OSP's grievances are processed according to regulations set out in the Oregon Administrative Rules (OAR), Chapter 291, Division 109. (*Id.* ¶¶ 2, 5.) Under those

regulations, AICs are encouraged to communicate with line staff verbally or in writing as their primary means of resolving disputes. (*Id.* ¶ 6 (citing OAR §§ 291-109-0100).) If that communication does not resolve the dispute, AICs are advised that they may file a grievance if it complies with the administrative rules and there is no other review process available. (*Id.* ¶ 6 (citing OAR § 291-109-0210(4)(d)).) Information about the grievance process is provided in the orientation packet that all AICs receive when they first arrive at an ODOC facility. Instructions are also contained in the AIC handbook and on the grievance forms, which are available on all housing units. (*Id.* ¶ 6, Ex. 1 (grievance form with instructions).)

An AIC may file a single grievance concerning any incident or issue regarding institutional life that directly and personally affects that AIC, including "a) the misapplication of department policies, rules, or other directives; b) unprofessional actions of employees, volunteers, or contractors; c) *inadequate medical care or mental health treatment*; d) sexual abuse or sexual harassment; and e) excessive use of force by department employees." (*Id.* ¶ 8 (citing OAR § 291-109-0205(1) (emphasis added)).) To obtain review, the AIC's grievance generally must be submitted within fourteen calendar days of the date of the incident giving rise to the grievance, unless the AIC can satisfactorily demonstrate why the grievance could not be timely filed. (*Id.*)

Here, it is undisputed that Blanscet did not file any grievances relating to his § 1983 claims for inadequate medical care.[5] Blanscet filed three grievances during his time in ODOC custody: (1) an October 2009 grievance requesting anxiety medication; (2) a November 2018

---

[5] For that reason, the court need not recount defendants' evidence regarding the grievance appeal process.

grievance complaining that he had not been prescribed a specific anti-anxiety medication; and (3) a January 2022 grievance requesting a podiatrist-approved shoe lift. (Joint Statement ¶ 4.) None of those grievances pertain to his claims that Paulson "failed to take any meaningful steps to diagnose [his] injuries for almost a year, ordered [him] to undergo physical therapy without identifying the cause of [his] injuries, and failed to prescribe effective pain medications." (Compl. ¶¶ 34, 42.)

Nevertheless, Blanscet argues that defendants have failed to satisfy their initial burden under *Williams* because Erikson's declaration does not "provide the minimum testimony necessary to establish" the availability of an administrative remedy. (Pl.'s Resp. at 7-8.) His arguments are unavailing. For instance, although Blanscet contends that Erikson lacks "practical, personal knowledge of how an AIC can obtain and submit a grievance form," he offers no evidence to contradict Erikson's testimony that he "assist[s] the Grievance Coordinator in the processing of grievances," and therefore draws from a "combination of personal knowledge and [] reliance on ODOC records" to explain the grievance process. (Erikson ¶¶ 1-2.) Likewise, Blanscet's argument that Erikson's declaration does "little more than quote the relevant Oregon Administrative Rules" is not well-taken. Courts within this district routinely accept declarations accompanied by "copies of the ODOC rules governing grievances, and the written explanation of the grievance procedures given inmates on admission to ODOC custody" as sufficient evidence that grievance procedures are available to inmates. *See, e.g.*, *Preuitt v. Oregon Dept. of Corr.*, Case No. 3:16-cv-00835-PK, 2017 WL 3498857, at *2 (D. Or. July 21, 2017); *Warren v. Oregon Dept. of Corr.*, Case No. 3:19-cv-00632-YY, 2021 WL 1723652, at *2 (D. Or. Apr. 30, 2021). Blanscet does not meaningfully distinguish Erikson's declaration from such evidence.

Page 11 – OPINION AND ORDER

Accordingly, the court finds that defendants have carried their initial burden of showing that grievance procedures are generally available to AICs at OSP and that Blanscet did not properly exhaust grievances relating to his federal claims.

Blanscet contends that, despite the general availability of an administrative remedy, he should be excused from the PLRA's exhaustion requirement because the grievance process was effectively unavailable to him under the circumstances. (Pl. Br. at 8-9.). To require exhaustion, an administrative remedy must be available to an AIC "as a practical matter; it must be capable of use; at hand." *Albino*, 747 F.3d at 1171 (quoting *Brown*, 422 F.3d at 927). The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) when the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the "administrative scheme might be so opaque that it becomes incapable of use"; and (2) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

Blanscet advances three arguments to support his position that the grievance process was effectively unavailable to him between May 2018 and April 2019. First, he notes that Erikson's declaration does not specify the location of the grievance forms *within* the housing units and implies that his mobility issues rendered him unable to access those forms. However, Blanscet offers no evidence, such as a personal declaration, to establish that he could not access the grievance form within the housing unit. Instead, the record reflects that he successfully filed a grievance requesting a specific anxiety medication in November 2018. (Erikson Decl. ¶ 15, Ex. 3

at 4; Joint Statement ¶ 4.) Thus, he has not raised a genuine dispute of material fact regarding the accessibility of the grievance forms within the housing unit during the relevant period.

Next, Blanscet argues that defendants have not established the availability of the grievance process during his hospitalization from April 3 to April 12, 2019, a period soon after his March 18 prostate cancer diagnosis. (Pl. Resp. at 8.) The court notes, however, that despite the apparent unavailability of grievance forms during that nine-day period, Blanscet was returned to OSP custody in stable condition within the fourteen-day period generally provided for filing a grievance. (Reilly Decl. ¶ 6, Ex. 5 at 1-5; Erikson Decl. ¶ 8 (citing OAR 291-109-0205(2)).) Under those circumstances, he likely also could have "satisfactorily demonstrate[d]" why he could not file a timely grievance related to his diagnosis or general medical care. (*Id.*) Because Blanscet submits no evidence showing that he attempted to file a grievance during or following his hospitalization, he has not raised a genuine dispute of material fact regarding the effective availability of the grievance process during that period. *Albino*, 747 F.3d at 1171 (to overcome defendant's initial burden, plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him").

Finally, Blanscet contends that he was "thwarted" from using the grievance system because he feared retaliation from Paulson following an appointment on December 17, 2018. (Pl.'s Resp. at 9.) At that appointment, Blanscet expressed frustration that Paulson was not responding to his concerns and stated that he "might have to retain a lawyer" to ensure that his needs were met. (Reilly Decl. ¶ 2, Ex. 1 at 6.) Paulson responded by advising Blanscet that

retaining legal counsel could be considered "a form of extortion" and "shut down the appointment" with "no further communication." (*Id.*)[6]

"[T]he threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). "In order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the prisoner must show that (1) 'he actually believed prison officials would retaliate against him if he filed a grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure.'" *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018) (quoting *McBride*, 807 F.3d at 987).

Construing the facts in the light most favorable to Blanscet, his allegation that he perceived Paulson's discussion of extortion to be a threat not to use the prison grievance system is sufficient to satisfy the subjective prong of the retaliation test. Beginning in May 2018, Blanscet communicated on at least seven occasions—in kytes and at medical appointments—that he was experiencing persistent, often worsening, pain in his hip. (*See* Reilly Decl. ¶¶ 5, Ex. 4 at 1-5.) Paulson responded to those complaints by ordering an x-ray and cortisone shot in June 2018 and physical therapy in November and December 2018. (*Id.*) In a kyte dated December 16, 2018, Blanscet reported that he was experiencing regression and feared "permanent injury" from

---

[6]  Paulson's progress note from that appointment similarly documents "subtle legal threats – counselled re: extortion." (Reilly Decl. ¶ 4, Ex. 3.). When questioned about that note during his deposition, Paulson testified: "I'll write that [note] to document that I had counseled the person about . . . not threatening me . . . as part of the medical visit." (Id. ¶ 3, Ex. 2 at 13.)

PT, stated that he needed to see Paulson "ASAP due to UNBEARABLE PAIN," and expressed frustration that Paulson's lack of care was "starting to look like deliberate indifference to [his] physical wellbeing." (*Id.* at 5.) Given those communications, Blanscet could have subjectively believed that Paulson's discussion of extortion constituted a threat not to pursue legal action or an administrative remedy regarding his medical care.

Blanscet has not satisfied the objective prong of the retaliation test, however. Although the alleged threat of retaliation "need not explicitly reference the grievance system in order to deter a reasonable inmate from filing a grievance, there must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to use the grievance system." *McBride*, 807 F.3d at 988 (internal citation omitted). Additionally, the Ninth Circuit has recognized that the threat must be "specific" and of "sufficient severity to deter a reasonable prisoner from filing a grievance." *Sealey v. Busichio*, 696 Fed. Appx. 779, 781 (9th Cir. 2017) ("Although circumstantial evidence can be sufficient to overcome summary judgment in retaliation case, such evidence must be specific."); *Rodriguez*, 891 F.3d at 792 (both prongs satisfied for inmate who declared that the day he turned in a complaint, a sergeant came to his cell, mentioned another inmate who had been badly beaten, stated "that's how rats are treated when they lie about my deputies," and said "for your own good, I'm going to forget you turned in this complaint. Keep your mouth shut.").

Blanscet contends that, when Paulson stated that taking legal action could be considered extortion, he reasonably "thought there was going to be some kind of retaliation where they were going to ship [him] out" to another facility if he filed a grievance or acquired legal assistance to

advocate for his medical care. (Reilly Decl. ¶ 2, Ex. 1 at 7.) However, he offers no evidence that Paulson made any specific threat of retaliation to that effect. The Ninth Circuit has explained that, without such evidence, there "is no reason to allow inmates to avoid filing requirements on the basis of hostile interactions with [prison personnel] when the interaction has no apparent relation to the use of the grievances system." *McBride*, 807 F.3d at 988. Here, although the appointment grew hostile and the mention of "extortion" was serious,[7] there is no evidence that Paulson issued a specific threat against Blanscet nor any argument connecting Paulson's extortion comment to Blanscet's use of the *grievance system*. Moreover, following that interaction, Blanscet continued to advocate for his medical care in kytes directed specifically to Paulson, and there is no evidence that he was threatened or punished for that advocacy. *See Osborne v. Peters*, Case No. 2:20-cv-02260-MC, 2022 WL 2904395, at *4 (noting "no evidence that [prison] personnel threatened or punished plaintiff when he sought help through kytes" and other informal communications with prison staff). Therefore, even viewing the hostile interaction with Paulson in the light most favorable to him, Blanscet has not raised a genuine dispute of material fact that "a reasonable prisoner would have understood [Paulson's] statement to mean that the prisoner would be retaliated against for filing a grievance." *See Sealey*, 696 Fed. Appx. at 781 (affirming court's conclusion that "medical staff's threat that if Sealey 'caused any trouble about the medical care, [he] would be transferred to another institution where really bad inmates were and [he] would not receive any medical care" was insufficient to satisfy objective prong);

---

[7]   In Oregon, the crime of extortion is a Class B felony and requires, among other things, the threat of violence or criminal activity to compel someone to provide a service to them. O.R.S. § 164.075. That is not what happened here. Blanscet expressed his belief that he may need a lawyer to advocate on his behalf to have Paulson—likely the only medical care provider available to him—take his medical needs seriously.

Page 16 – OPINION AND ORDER

*McBride*, 807 F.3d at 988 (in action alleging excessive force, inmate's allegations that guards threatened him after beating him by saying he was "lucky" because his injuries "could have been much worse" fails to meet the objective prong because an inmate would not have reasonably understood from the statement that the guards intended to retaliate if he filed an appeal). Accordingly, Blanscet has not demonstrated that he should be excused from exhausting his administrative remedies due to fear of retaliation.

In summary, because Blanscet did not file grievances relating to his § 1983 claims and has not established that the grievance process was effectively unavailable to him under the circumstances, there is no genuine dispute of material fact that he failed to properly exhaust available administrative remedies as required by the PLRA. Accordingly, the court grants summary judgment for defendants and dismisses Claims 3 and 4 without prejudice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."), *overruled on other grounds by Albino*, 747 F.3d at 1166.

**B.**  ***State Law Claims and Supplemental Jurisdiction***

A district court may decline to exercise supplemental jurisdiction over a state law claim where "the claim raises a novel or complex issue of State law" or the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). After dismissing all federal claims, the court's decision whether to exercise supplemental jurisdiction over a remaining state law claim is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). The court's decision is informed by values of "economy, convenience, fairness, and comity." *Acri v. Varion Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). "[I]n the

usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 350 n.7 (1988).

After careful consideration, the court declines to exercise supplemental jurisdiction over Blanscet's remaining state law negligence claims—Claims 1 and 2. All of Blanscet's federal claims are dismissed, triggering the court's discretion under 28 U.S.C. § 1367(c)(3). Moreover, the unique framework of Oregon negligence law makes this case better suited for state court and inconvenience to the parties is minimal because this case is at the summary judgment stage and no trial date has been set. *See Lima v. U.S. Dep't of Educ.*, 944 F.3d 1172, 1178 (9th Cir. 2019) (finding no abuse of discretion where district court declined to exercise supplemental jurisdiction after granting summary judgment on all federal claims). The balance of factors therefore favors declining to exercise supplemental jurisdiction in this case.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (ECF No. 44) is GRANTED as to Blanscet's federal claims. The court declines to exercise supplemental jurisdiction over Blanscet's remaining state law negligence claims.

IT IS SO ORDERED.

DATED: January 31, 2023.

_____
JEFFREY ARMISTEAD
United States Magistrate Judge